Orig

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ORIGINAL

------------------------------X         COMPLAINT

ELLIOT PAYNE

             Plaintiff,

   -against-             CV17-3392

CITY OF NEW YORK POLICE DEPARTMENT,
67TH POLICE PRECINCT, LIEUTENANT
MCLAUGHLIN, RODRIGUEZ. A NEW YORK CITY
POLICE OFFICER, YANIQUE JEAN A NEW YORK     VITALIANO, J.
CITY POLICE OFFICER, JANE DOE A NEW YORK
CITY POLICE OFFICER, SERGEANT, A NEW YORK
CITY POLICE OFFICER, JOHN DOE A NEW YORK
CITY POLICE OFFICER, KINGS COUNTY            MANN. M.J.
CRIMINAL COURT,

                Defendants.

------------------------------X

Parties:

Plaintiff ELLIOT PAYNE, resides at 861 E 46 Street BSMT, Brooklyn, NY 11203.

Defendant NYC POLICE DEPT, resides at C/o No1 Police Plaza, New York NY 10007.

Defendant NYC 67TH POLICE PRECINCT, resides at C/o No1. Police Plaza New York, NY 10007.

pg1 of 9

Defendant Lieutenant McLaughlin, resides at c/o No1. Police Plaza, New York, NY 10007.

Defendant Rodriguez, a new york City Police officer, resides at c/o No1. Police Plaza, New York, NY 10007.

Defendant Jean, a new York City Police officer, resides at c/o No1. Police Plaza, New York, NY 10007.

Defendant Jane Doe, a new york City Police Sergeant/officer, resides at c/o No1. Police Plaza, New York, NY 10007.

Defendant John Doe, a new york City Police officer, resides at c/o No1. Police Plaza, New York, NY 10007.

Defendant Kings County Criminal Court, resides at c/o No1. Police Plaza, New York, NY 10007 / 120 Schermerhorn Street, Brooklyn, NY 11201.

JURISDICTION

The Court has jurisdiction pursuant to 42 U.S.C. §1983 28 U.S.C. §1331.

STATEMENT OF FACTS:

1. On the night of November 3, 2015, Plaintiff Elliot Payne and his mother Patricia Atkins-Payne decided on arrival home to enter the residence - 861 E 46 STREET, BROOKLYN, NY 11203 from the front entrance door -

2. Plaintiff mother Ms. Payne is Sole Owner of the residence.

3. Approximately 7:30/8:00 PM Plaintiff and his mother arrived at the residence and was surprised to find the entrance door open.

4. MR. DAVID PAYNE is Plaintiff's father who is also disable due to his manager - May 8, 1987 Physically attacked him on his job, leaving him with a diagnose of: - TRAMATIC BRAIN INJURY that left MR. PAYNE in the use of a POWER WHEEL CHAIR and was unable to return to work for his family ever since.

5. Plaintiff and his mother Ms. Payne entered the residence and found the Living-room door open where Plaintiff's father lives on the 1st floor.

6. Plaintiff's father MR. PAYNE was sitting in his recliner-chair, and at that time appeared to be all shucked up.

7. Plaintiff's mother asked his father what was the matter with him he informed her that:

8. Two female Police Officers suddenly pushed the living-room door open, while he was relaxing watching television, and identified themselves as Police Officer Rodiguez and

Police officer Jean from the 67th Police Precinct.

9. The two female Police officers did not present or offer any search or arrest Warrant.

10. The two female Police officers questioned Plaintiff's father about his son Elliot who lives at the residence — in the basement apartment, including asking him whether Plaintiff or his mother Ms. Payne was at home.

11. Police officer Rodriguez, further asked Plaintiff's father Mr. Payne if Plaintiff - Elliot Payne was in the Basement.

12. Mr. Payne told the two Police officers Rodriguez and Jean that neither his son or his mother was at home.

13. The two Police officers, Rodriguez and Jean looked at each other after hearing Plaintiff and his mother was not at home, and imediately rushed down stairs, through the Livingroom/Diningroom/Kitchen to Plaintiff's Basement apartment, where he lives and believed the two Police officers allegedly searched Plaintiff's basement apartment without supervision from his Disable father Mr. Payne.

14. Police officer Rodriguez and Police officer Jean entered into Plaintiff's basement apartment without asking or having Permission from Plaintiff's father Mr. Payne, who was the only person home at that time.

15. The two female Police officer's had knowledge of MR. PAYNE's disability.

16. When the two female Police Officers came back upstairs from being alone in Plaintiff's basement apartment They found Plaintiff's father MR. PAYNE still sitting in his recliner-chair where the two Officer 1st left him.

17. That Night the two female Police Officers came from Plaintiff's basement apartment through the Kitchen/Dining room, returning to the Living room.

18. Police Officer RODIGUEZ and Police Officer YANIQUE was looking through the above rooms of Plaintiff's mother residence, from Side to Side and did Not find Plaintiff or his mother MS. PAYNE in the residence.

19. That Night Plaintiff's father informed Plaintiff's Mother, When the two Police Officers was leaving the residence Police officer RODIGUEZ told him:
When Plaintiff and his mother return home that PM
That there is a Search and Arrest Warrant out for Plaintiff and he should turn himself [IN.]

20. And Police Officer YANIQUE JEAN agreed with Police Officer RODIGUEZ.

21. Plaintiff's mother called the 67th Precinct that night approximately 9:00, an officer answered from the "SQUAD UNIT" Plaintiff's mother informed him of the above —
The officer said yes a Warrant is out for Plaintiff's arrest.

22. Plaintiff's mother asked the officer who signed the Warrant- he said Detective MC LAUGHLIN.

23. Plaintiff's mother was advised to call Detective Mc LAUGHLIN the following day at 8:00 Am when he comes in to speak with him in the above regards.

24. On the 11/04/2015 Am Plaintiff and his mother arrived at the Criminal Court to find out if Plaintiff had the supposenly Search or arrest Warrant pending for his arrest.

25. Plaintiff was told No by the 1st floor Clerk who also advised him to go up stairs to further check.

26. The male clerk upstairs told Plaintiff there was no Warrant in the System for his arrest.

27. On arrival home Plaintiff informed his father MR. PAYNE that No Warrant was found in the System for his arrest.

28. Plaintiff's father told him he felt much relief.

29. On 11/12/2015 approximately 6:30 Am, Plaintiff had just got out the Shower, went to his bedroom to get dress for College when he heard one knock on his entrance door.

30. Plaintiff was trying to get dress in order to answer the door, but could not.

31. Imediately after the knock Plaintiff could not get dress fast enough, when he saw three New York City Police officers had already entered Ms. PAYNE basement where Plaintiff's Lives through a basement entrance.

32. These three New York City Police officers came down the basement inside steps where Plaintiff Lives.

33. Police Officer RODRIGUEZ was infront the other two Police officers when they entered Plaintiff's Living space heading straight towards Plaintiff's bedroom.

34. The three Police Officers then entered Plaintiff's bedroom surrounding him, when Police Officer RODIGUEZ told him he was under Arrest.

35. The three Police officers did Not present or offer any search or arrest Warrant.

36. The Three New York City Police Officers did Not have a Warrant.

37. The three New York City Police officers did not read Plaintiff's his Fourth Amendment rights.

38. Plaintiff asked Police officer RODIGUEZ to allow him to call his mother MS. Payne to the basement to inform her of his arrest, approximately 6:55 AM while MS. Payne was still in her Bed.

39. When Plaintiff mother was going down to the Basement, She found the side door open that is the entrance to her basement, But did'nt think anything of it.

40. Plaintiff's mother was entering Plaintiff Bedroom She saw Officer RODIGUEZ, COLETTE and another Male Police officer.

41. Plaintiff's mother also Saw when Police officer RODIGUEZ Motion to the Male Police officer to take Plaintiff out of her residence in handcuffs with officer COLETTE as his assistance.

42. Plaintiff was taken to the 67th Precinct.

43. Plaintiff Stayed in jail overnight and was arraigned the next day.

44. Plaintiff missed two days straight of his College Exams because of the arrest.

45. Plaintiff's mother asked Office RODIGUEZ how did they entered her residence. Police officer stated "The door was open".

46. After Plaintiff returned from jail his Mother asked him about the entrance basement door, and he told his mother – The door was Locked from the night before.

47. Soon after Plaintiff's sister told Plaintiff's mother that while she was in jail. Her Lawyer told her that: She has in her file The three police officers said that She Sharon open the door that morning for them.

48. Plaintiff's sister did Not because she was Sleeping and after Plaintiff's arrest Officer RODIGUEZ and COLETTE went up stairs because the Police officers told Plaintiff's Mom: They wanted to see Sharon and Plaintiff's mother witnessed Sharon being woke by Police Officer RODIGUEZ from a deep sleep that Am, and Sharon let her Lawyer know this. Plaintiff's mother Lock was forced/sprung open that morning.

49. Plaintiff's mother noticed her Lock was sprung after the Police officers left, her lock was NOT like that [just] the day before, and to this day even – after putting on a second Lock It never was the same.

50. Plaintiff's mother went to the 67th Precinct to see about both him and his sister's arrest by both female Police officers, and was in time to see Detective coming on duty that day 11/12/2015 approximately 8:00 Am. He was extremely upset.

Pg 8 of pg 9

51. Plaintiff's mother saw Police officer RODIGUEZ, YANIQUE and COLETTE went to Detective McLAUGHLIN as they started informing him how they used his name to arrest Plaintiff and his Sister. He told the three officers that they were in a lot of trouble and looked at officer RODIGUEZ and said "and you, you are in some big, big trouble and he did not want to hear nothing from her." RODIGUEZ and YANIQUE looked at Plaintiff's mother and held their heads down.

WHEREFORE, Plaintiff requesting a finding that his rights were violated and an award of damages for lost of Liberty and emotional distress cause by the arrest of Plaintiff and for lost of liberty cause by the search of my living space of the premises that Plaintiff rents from his mother without probable cause and force entry and sprunging of Plaintiff basement-entry door in Violations of Plaintiff fowth-Amendment rights of Elliot Payne. Damages in the Sum amount of 4 Million with cost and disbursements of this action, together with any other relief that this Court finds to be just and proper.

Dated: June 2, 2017

Elliot Payne